UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
(ROCK HILL DIVISION)

| | |
|---|---|
| TIFFANY COLEMAN, KELI SWANN, and HEATHER BROOKE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRITAX CHILD SAFETY, INC.,<br><br>Defendant. | }<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}<br>}      CASE NO.: 0:21-cv-00721-SAL |

## **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARDS**

Dated: November 27, 2023.

Respectfully submitted,

*/s/ Harper T. Segui*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Harper T. Segui
Martha A. Geer*
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
hsegui@milberg.com
mgeer@milberg.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Phone: (865) 247-0080
Fax: (865) 522-0049
jcohen@milberg.com

***Attorneys for Plaintiffs***
* admitted *pro hac vice*

## **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND........................................... 1

  A.  Procedural Background ............................................................................ 1

  B.  Settlement Discussions and Preliminary Approval .................................. 4

MATERIAL TERMS OF THE SETTLEMENT .................................................. 4

  A.  The Settlement Fund ............................................................................... 4

  B.  The Settlement Class ............................................................................... 5

  C.  Class Benefits ......................................................................................... 5

      1.  Monetary Settlement Benefits .......................................................... 5

      2.  Non-Monetary Settlement Benefits .................................................. 6

ARGUMENT ...................................................................................................... 7

  I.  Class Counsel's Fee Request Meets the Seven Factors for a Percentage of a Common Fund Outlined in *Cendant*, as well as the Lodestar Crosscheck in *Barber* ..................................... 7

     A.  This Court May Award Attorneys' Fees Based on a Percentage of a Common Fund ..... 7

     B.  Application of the Percentage of the Fund Method Supports the Requested Award of Attorneys' Fees ............................................................................................. 9

        1.  The Results Obtained for the Class ................................................. 10

        2.  Class Member Objections ............................................................... 11

        3.  The Quality, Skill, and Efficiency of the Attorneys Involved................ 11

        4.  The Complexity and Duration of the Litigation ............................... 12

        5.  The Risk of Nonpayment ................................................................ 12

        6.  Public Policy.................................................................................. 13

        7.  Awards in Similar Cases ................................................................ 13

     C.  Application of the Lodestar Crosscheck Supports an Award of Plaintiffs' Attorneys' Fees ................................................................................................... 13

        1.  The Time and Labor Required (First, Seventh, and Eleventh *Barber* Factors) ........ 14

        2.  Novelty and Difficulty of the Issues, and the Skill and Experience Required to Litigate Them, and the Undesirability of the Case in the Legal Community (Second, Third, Ninth, and Tenth *Barber* Factors) ....................................... 15

        3.  Counsel's Expected Compensation, the Customary Fee for Like Work, and the Preclusion of Other Employment (Fourth, Fifth, Sixth, and Twelfth *Barber* Factors) ...... 16

        4.  The Amount in Controversy and Results Obtained (Eighth *Barber* Factor)............. 18

II.     Class Counsel are Entitled to Reimbursement of Their Expenses ................................. 19

III.    Class Representatives Should be Awarded Service Awards ......................................... 19

CONCLUSION ................................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Allura Fiber Cement Siding Litig.*
2021 WL 2043531 (D.S.C. May 21, 2021)................................................................8, 10, 14, 20

*Anselmo v. W. Paces Hotel Grp., LLC*
2012 WL 5868887 (D.S.C. Nov. 19, 2012) ...........................................................................11

*Barber v. Kimbrell's Inc.*
577 F.2d 216 (4th Cir. 1978) ......................................................................................*passim*

*Berry v. Wells Fargo & Co.*
2020 WL 9311859 (D.S.C. July 29, 2020) ........................................................................8, 21

*Boeing v. Van Gemert*
444 U.S. 472 (1980).........................................................................................................7, 8, 10

*Brodziak v. Runyon*
145 F.3d 194 (4th Cir. 1998) ...............................................................................................11

*Brown v. Transurban USA, Inc.*
318 F.R.D. 560 (E.D. Va. Sept. 29, 2016) ..........................................................................18

*Case v. French Quarter III LLC*
2015 WL 12851717 (D.S.C. July 27, 2015) .........................................................................8

*In re Cendant Corp. PRIDES Litig.*
243 F.3d 722 (3d Cir. 2001) and (2) ...............................................................................*passim*

*Childress, et al. v. JPMorgan Chase Bank, N.A.*
Case 5:16-cv-00298-BO, D.E. 360 ......................................................................................9

*Chrismon v. Pizza*
2020 WL 3790866 (E.D.N.C. July 7, 2020) ........................................................................9

*DeWitt v. Darlington Cnty., S.C.*
2013 WL 6408371 (D.S.C. Dec. 6, 2013) ............................................................................18

*In re Evenflo Company, Inc. Marketing, Sales Practices & Products Liab. Litig.*
MDL No. 20-md-02938-DJC..................................................................................................12

*Hosch v. BAE Systems Info. Sols., Inc.*
2015 WL 12227738 (E.D. Va. Apr. 28, 2015) .....................................................................18

*Jimenez v. Artsana USA, Inc.*
No. 7:21-cv-07933-VB ................................................................................ 12

*Kelly v. Johns Hopkins Univ.*
2020 WL 434473 (D. Md. Jan. 28, 2020) ..................................................... 9

*Kidrick v. ABC TV & Appliance Rental, Inc.*
1999 WL 1027050 (N.D. W. Va. May 11, 1999) ....................................... 10

*Linneman v. Vita-Mix Corp.*
970 F.3d 621 (6th Cir. 2020) ........................................................................ 9

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*
27 F.4th 291 (4th Cir. 2022) .................................................................. 9, 14

*In re MI Windows & Doors Prods. Liab. Litig.*
2015 WL 4487734 (D.S.C. July 23, 2015) ................................................. 20

*Mullinax v. Parker Sewer & Fire Subdistrict*
2014 WL 12774925 (D.S.C. Mar. 11, 2014) .............................................. 11

*In re NeuStar*
2015 WL 8484438 .......................................................................................... 18

*Phillips v. Triad Guar. Inc.*
2016 WL 2636289 (M.D.N.C. May 9, 2016) ............................................. 18

*Redman v. RadioShack Corp.*
768 F.3d 622 (7th Cir. 2014) ........................................................................ 9

*Reed v. Big Water Resort, LLC*
2016 WL 7438449 (D.S.C. May 26, 2016) .................................... 16, 17, 19

*Robinson v. Carolina First Bank NA*
2019 WL 2591153 (D.S.C. June 21, 2019) ......................... 7, 14, 19, 20

*Savani v. URS Prof'l Solutions LLC*
2014 WL 172503 (D.S.C. Jan. 15, 2014) ................................................... 20

*In re Sw. Airlines Voucher Litig.*
799 F.3d 701 (7th Cir. 2015) ........................................................................ 9

## Statutes

28 U.S.C. § 1712 ............................................................................... 8, 9, 11

## INTRODUCTION

Plaintiffs Tiffany Coleman, Keli Swann, and Heather Brooke and Class Counsel Milberg, Coleman, Bryson, Phillips, Grossman PLLC move the Court for an award of attorneys' fees, expenses, and service awards. After more than two years of litigation—including substantial written discovery, depositions, initial expert depositions, and full class certification briefing—the Parties were able to reach a nationwide settlement of Plaintiffs' claims that defendant Britax Child Safety, Inc. had falsely advertised its booster seats as being side-impact tested and having special side-impact protection. In settling, Britax has agreed to a non-reversionary common fund with a minimum amount of $1.3 million to pay claims, administration expenses, any Court-approved attorneys' fees and expenses, and any Court-approved service awards. If the $1.3 million fund is exhausted before all Class Members' claims are paid, Britax will replenish the fund up to $1.8 million. However, if the $1.3 million fund is not exhausted, then the Parties will ask the Court to make *cy pres* awards either to not-for-profit organizations related to the subject matter of this litigation or to third-party researchers doing relevant research.

As provided in the Settlement, Class Counsel seek $450,000 in fees and expenses, which is only 25% of the total funds made available to class members—a percentage that courts awarding fees from a common fund regularly approve. Plaintiffs also each seek $2,500 as a service award based on their work as class representatives to advance this class action. That amount is justified by Plaintiffs' assistance of Class Counsel and their participation in discovery (including being deposed). These modest requests for fees and service awards fall well within the parameters governing this Court's review and warrant approval.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural Background

On March 12, 2021, Plaintiffs Tiffany Coleman and Keli Swann commenced a putative

class action against Britax in the District of South Carolina on behalf of a nationwide class and Indiana and North Carolina subclasses. ECF No. 1. Prior to filing this class action, Plaintiffs' counsel extensively researched Britax, its history of selling the Booster Seats, its marketing representations related to the Booster Seats over time, and the findings and conclusions related to Britax set out in the December 10, 2020 Staff Report of the House of Representatives Subcommittee on Economic and Consumer Policy entitled: "*Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Meaningless Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats.*" Declaration of Martha A. Geer and Jonathan Cohen in Support of Attorneys' Fees ¶ 8 ("Class Counsel Decl.").

On August 4, 2021, prior to Britax responding to the Complaint, the parties engaged in a one-day mediation with Thomas J. Wills, an experienced and respected mediator. Class Counsel Decl. ¶ 12. That mediation session was ultimately unsuccessful, and Britax filed its Answer on August 27, 2021. *Id.* On November 30, 2021, Plaintiffs filed an Amended Complaint adding a third named plaintiff, Heather Brooke, and a Florida subclass. ECF No. 48.

Plaintiffs' Amended Complaint alleged that Britax's advertising practices focused on persuading parents that Britax's Booster Seats have a higher market value because of their alleged enhanced safety features for side-impact collisions and claimed side-impact testing—in other words, as the Amended Complaint alleged, Britax could charge a market premium for the Booster Seats. ECF No. 48 ¶¶ 40-41. Plaintiffs alleged that despite the lack of a federal safety standard or test for side-impact testing of booster seats, Britax created its own test with no basis in safety or science in order to be able to label the Booster Seats as side-impact tested. *Id.* ¶¶ 52-55. Plaintiffs further alleged that Britax's marketing of its side-impact testing and side-impact protection was misleading and intended to assure parents that they could move their children from harnessed car

2

seats to booster seats—which use the car's own safety belts rather than a harness—without decreasing the children's safety. *Id.* ¶¶ 60-61.

Additionally, Plaintiffs alleged that after the publication of the House Subcommittee's Report, Britax continued to advertise the Booster Seats as having special side-impact protection despite offering no evidence that the features were more effective or better than those of other manufacturers. *Id.* ¶¶ 64-65. Plaintiffs alleged that Britax continued to place "Side-Impact Tested" labels on the Booster Seats after the House Subcommittee Report was published as well. *Id.* ¶¶ 67. All of these actions, Plaintiffs alleged, allowed Britax to increase its market share of booster seat purchases and sell the Booster Seats at a premium. *Id.* ¶¶ 67-69.

Britax denied all the material allegations in the Amended Complaint, and the Parties proceeded with discovery. Plaintiffs served Britax with four sets of Requests for Production of Documents, three sets of Requests for Admissions, and one set of Interrogatories. Class Counsel Decl. ¶ 14. In addition to responding to the written requests, Britax produced numerous documents relating to the design, testing, and marketing of the Booster Seats. *Id.* Plaintiffs also served subpoenas duces tecum on retailers of the Booster Seats, including Albee Baby, Amazon, Bed Bath & Beyond, Buy Buy Baby, Kohl's, Target, and Walmart, and negotiated with them. *Id.* During the discovery period, Plaintiffs also consulted with experts in child restraint system testing and consumer perceptions and researched representations made and testing done on booster seats sold by other Britax related entities in Europe. Class Counsel Decl. ¶ 15.

Britax in turn served Plaintiffs with requests for production of documents and interrogatories. Each Plaintiff responded separately to the interrogatories and produced responsive documents. Class Counsel Decl. ¶ 16.

On December 29, 2022, while discovery was ongoing, Plaintiffs filed a motion for class certification. ECF No. 71. In support of this motion, Plaintiffs submitted a declaration from a child

restraint system testing expert and declarations from two of the Plaintiffs. *Id.* Prior to responding to the motion, Britax took the depositions of each of the Plaintiffs and Plaintiffs' expert. Class Counsel Decl. ¶ 18. Britax filed its opposition on February 16, 2023, including declarations from (i) an expert rebutting Plaintiffs' testing expert and (ii) a consumer perception expert. ECF No. 77. Britax also filed a *Daubert* motion with respect to Plaintiffs' expert. ECF No. 76. Plaintiffs took the depositions of both experts, Class Counsel Decl. ¶ 18, and filed a reply brief in support of class certification and an opposition to the *Daubert* motion on March 23, 2023, ECF Nos. 83, 84.

**B.    <u>Settlement Discussions and Preliminary Approval</u>**

While discovery and the class certification briefing was occurring, the Parties discussed scheduling a second mediation. Class Counsel Decl. ¶ 20. On April 19, 2023, the Parties engaged in a second mediation with Mr. Wills. The Parties made substantial progress towards a settlement during the mediation, which lasted all day. *Id.* ¶ 21. Following the mediation, while the parties continued to address remaining discovery disputes and worked on scheduling additional depositions, they also continued to negotiate a potential global settlement. *Id.* ¶ 22. They ultimately reached agreement on the material terms as reported to the Court on June 21, 2023. *Id.* ¶ 23. The parties then continued to negotiate the specific terms of the settlement agreement, the executed version of which was filed on August 14, 2023. ECF No. 119-3. The Court preliminarily approved the Settlement on August 25, 2023. ECF No. 123.

<b><u>MATERIAL TERMS OF THE SETTLEMENT</u></b>

**A.    <u>The Settlement Fund</u>**

In the Settlement Agreement, Britax agreed to establish a settlement fund to provide payment of the cash benefits to the Class, as well as the costs of notice, settlement administration, Plaintiffs' service awards, and attorneys' fees and expenses up to $1.8 million.  ECF No. 119-3 p. 2 ¶¶ E, F; p. 3 ¶ P; pp. 6-7 ¶¶ 3.2., 3.3. Britax is required to establish a non-reversionary common

fund with a cash minimum of $1.3 million no part of which will revert to Britax if the fund is not exhausted. *Id.* p. 2 ¶¶ E, F; pp. 6-7 ¶ 3.2.1. The fund shall pay for cash refunds to valid claimants, costs of class notice and settlement administration, and attorneys' fees and expenses and service awards as approved by the Court. *Id.* p. 7 ¶ 3.2.3. If the total cost of those payments exceed $1.3 million, then Britax is required to pay a replenishment amount not to exceed $500,000 in order to pay for cash refunds to any additional valid claimants. *Id.* p. 7 ¶ 3.3.1.5.

In the event that the required payments do not exhaust the $1.3 million minimum fund, then "the amount remaining shall be (i) paid to *cy pres* not-for-profit organizations of the Parties' collective choosing and related to the subject matter of the litigation (including, but not limited to, Safe Kids Worldwide), and/or (ii) used to fund third parties' research and development and/or educational car seat campaigns." *Id.* p. 7 ¶ 3.2.3.4.

### B.  The Settlement Class

Plaintiffs are seeking final approval of the Settlement on behalf of the following Settlement Class: "All natural persons who purchased, not for resale, any Booster Seat in the United States from March 12, 2015, to the date of entry of the Preliminary Approval Order." *Id.* p. 2 ¶ S. "Booster Seat" means "any of the following Britax belt-positioning booster seats sold in the United States between March 12, 2015 and the date of entry of the Preliminary Approval Order: Highpoint, Midpoint, Parkway SG, Parkway SGL, and Skyline." *Id.* p. 2 ¶ C. Excluded from the Settlement Class are (i) Britax; (ii) Britax's parents, subsidiaries, affiliates, officers, directors, investors, and employees; (iii) any entity in which Britax has a controlling interest; and (iv) any judge presiding over this Action, their staff, and the members of the judge's immediate family. *Id.* p. 2 ¶ S.

### C.  Class Benefits

#### 1.  Monetary Settlement Benefits

If the Settlement is approved, Britax will provide Settlement Class Members possessing

proof of purchase with a choice of either a $25 cash refund *for each past Booster Seat purchase* or one $40 voucher that can be used to purchase products on the Britax website. *Id.* p. 5 ¶ 3.1.1. The Settlement provides a broad definition of what constitutes Proof of Purchase.[1] *Id.* p. 5 ¶ 3.1.4. Settlement Class Members without proof of purchase may each obtain a $25.00 voucher. *Id.* p. 5 ¶ 3.1.2). Those Settlement Class members without proof of purchase are required to answer correctly certain questions specified in the Settlement in order to verify that they did in fact purchase a Britax Booster Seat. *Id.* p. 5 ¶ 3.1.2.

Importantly, the $25 and $40 vouchers will not subtract from the Settlement's Cash Minimum Amount of $1,300,000, the Replenishment Amount of $500,000, or the Maximum Cap of $1,800,000. *Id.* p. 7 ¶ 3.3.2.1. Only the $25 cash payments selected by Claimants with proof of purchase will be paid from the Settlement Fund.

### 2.    Non-Monetary Settlement Benefits

In addition to the monetary benefits described above, Britax has also agreed to non-monetary benefits that will educate parents and other consumers about safely transitioning their children from harnessed car seats to booster seats, including further educating consumers in the United States and purchasers of the Booster Seats by providing additional, readily accessible information regarding (i) the safety benefits of not transitioning to belt-positioning booster seats too early in a child's development, (ii) proper installation of belt-positioning booster seats, and (iii) proper placement of children in belt-positioning booster seats. *Id.* p. 7 ¶ 3.3.3.

---

[1] Proof of purchase can take a variety of forms and is defined to include (i) a valid receipt or order confirmation from an authorized retailer; (ii) other physical evidence reflecting the Claimant's purchase claim (*e.g.*, a credit card statement or invoice that definitively identifies the purchase amount) accompanied by a description of the Booster Seat model purchased; or (iii) evidence of the purchase in Britax's available records either as (a) a result of making a direct purchase from Britax's website us.britax.com or (b) by applicable product registration with Britax. Claimants are not required to provide proof of purchase for purchases of Booster Seats reflected in Britax's records. *Id.* p. 5 ¶ 3.1.4.

## ARGUMENT

Class Counsel seek an award of $450,000 in attorneys' fees and expenses to be paid from the common fund of $1.3 million (which if exhausted will be replenished up to $1.8 million). Class Counsel's proposed fees and expenses thus amount to 25% of the maximum amount available. The requested amount is also a fraction of Class Counsel's lodestar. Plaintiffs seek service awards in the amount of $2,500 each—a modest amount given the time and effort they invested in this litigation, including full-blown participation in discovery that required production of documents, responses to interrogatories, and sitting for depositions. The requested attorneys' fees and service awards fall squarely within amounts routinely approved in this District.

**I.     Class Counsel's Fee Request Meets the Seven Factors for a Percentage of a Common Fund Outlined in _Cendant_, as well as the Lodestar Crosscheck in _Barber_.**

> **A.     This Court May Award Attorneys' Fees Based on a Percentage of a Common Fund.**

In the Fourth Circuit, "it is well-settled that, when a class settlement results in a common fund for the benefit of class members, reasonable attorney's fees may be awarded from the common fund." _Robinson v. Carolina First Bank NA_, 2019 WL 2591153, at *13 (D.S.C. June 21, 2019) (cleaned up). This principle has long been the law in the United States. _See Boeing v. Van Gemert_, 444 U.S. 472, 478 (1980) ("Since the decisions in _Trustees v. Greenough_, 105 U.S. 527, 26 L. Ed. 1157 (1882), and _Central Railroad & Banking Co. v. Pettus_, 113 U.S. 116, 5 S.Ct. 387, 28 L. Ed. 915 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); _see also Berry v. Wells Fargo & Co.,_ 2020 WL 9311859, at *11 (D.S.C. July 29, 2020) (citing the same principle from _Boeing_).

There are two general methods for determining the amount of attorneys' fees to be awarded in class action cases: (1) the percentage-of-the-fund method set forth in _In re Cendant Corp._

*PRIDES Litig.*, 243 F.3d 722, 733-34 (3d Cir. 2001) and (2) the lodestar method, following the standards adopted in *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226-27 (4th Cir. 1978). *In re Allura Fiber Cement Siding Litig.*, 2021 WL 2043531, at *3 (D.S.C. May 21, 2021). "The vast majority of courts use the percentage of recovery method, which is advantageous because it ties the attorneys' award to the overall result achieved rather than the number of hours worked." *Id.*

In determining whether the percentage sought is reasonable, Fourth Circuit courts apply the *Cendant* factors. *Id.* As an additional safeguard in determining the reasonableness of the percentage sought, courts in the Fourth Circuit also conduct the lodestar multiplier cross-check set forth in *Barber*, 577 F.2d at 226 n.28. *Allura*, 2021 WL 2043531, at *5. *See also Case v. French Quarter III LLC*, 2015 WL 12851717, at *10-11 (D.S.C. July 27, 2015) (applying *Cendant* to percentage of the fund analysis and employing a lodestar crosscheck under *Barber*). The $450,000 award for fees and expenses sought in this case meets the standards of both the percentage of the fund method set forth in *Cendant* and the lodestar multiplier cross-check set forth in *Barber*.

Even though the Settlement provides both for cash benefits and vouchers for purchases on Britax's website, Class Counsel's request for attorneys' fees is not affected by the provisions in the Class Action Fairness Act of 2005 ("CAFA") relating to awards of attorneys' fees. 28 U.S.C. § 1712. While the federal courts have almost unanimously agreed with Judge Richard Posner's observation regarding CAFA that "[it] is a badly drafted statute," *Redman v. RadioShack Corp.*, 768 F.3d 622, 633 (7th Cir. 2014), one aspect of § 1712 has not been disputed. Even if a settlement includes a coupon (called a voucher in this Settlement), CAFA does not affect a district court's ability to award fees based on a common fund so long as the common fund is based only on cash benefits and does not include the value of any coupons. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 27 F.4th 291, 302 & 304 (4th Cir. 2022) (holding that 28 U.S.C. § 1712 is "permissive in nature" and a court must consider

the actual value of coupons only when it chooses to rely on coupons as part of its percentage-of-recovery analysis); *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 627 (6th Cir. 2020) ("[Section 1712] does not mandate that courts calculate fees based on the value of the coupons redeemed in every coupon settlement. Rather, it requires courts to do so only when the attorney's fees are 'based upon' the coupons—that is, when a district court "grounds" its fees decisions in the coupons."); *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 710 (7th Cir. 2015) (holding that § 1712(a) only "prohibits basing a percentage-of-recovery fee on the face value of all coupons made available"). The $450,000 award that Class Counsel seek is based solely on a percentage of the cash component of the Settlement and does not involve the vouchers at all.

### B. Application of the Percentage of the Fund Method Supports the Requested Award of Attorneys' Fees.

As the court in *In re Allura Fiber Cement Siding Litigation*, observed:

> Courts in the Fourth Circuit have held that attorneys' fees in the amount of 1/3 of the settlement fund are reasonable. *See, e.g., Chrismon v. Pizza*, 2020 WL 3790866 *3 (E.D.N.C. July 7, 2020) (collecting cases); *Kelly v. Johns Hopkins Univ.*, 2020 WL 434473 at *3 (D. Md. Jan. 28, 2020) ("Contingent fees of up to one-third are common in this circuit.") (collecting cases); *Childress, et al. v. JPMorgan Chase Bank, N.A.*, Case 5:16-cv-00298-BO, D.E. 360, p. 2 (E.D.N.C. October 1, 2020). Here, the fee request of approximately 32% of the common fund is likewise reasonable in light of all pertinent factors.

2021 WL 2043531, at *4 (cleaned up). *See also id.* at *5 (citing *Kidrick v. ABC TV & Appliance Rental, Inc.*, 1999 WL 1027050 at *2 (N.D. W. Va. May 11, 1999) as "noting that awards of 30%, 35% and even 50% have been found reasonable").

Here, Class Counsel has obtained a settlement that establishes a common fund with a minimum value of $1.3 million and a maximum value of $1.8 million. As the Supreme Court has emphasized, the attorneys' fees awarded should be based on the total amount of funds *made available* to the absent class members as opposed to the amount of funds actually claimed. *Boeing*, 444 U.S. at 479-80 ("[The absent class members'] right to share the harvest of the lawsuit upon

proof of their identity, *whether or not they exercise it*, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional cost."). Because the potential maximum fund of $1.8 million is a benefit to the Class Members, it is appropriate to use that figure in applying the percentage-of-the-fund analysis.

The $450,000 in fees and expenses sought by Class Counsel amounts to 25% of the maximum common fund, well within the range accepted in the Fourth Circuit. Even if the minimum common fund of $1.3 million is used, the fees represent 35% of that fund, also within the accepted range.

Further, Class Counsel's fee request is consistent with the following seven factors identified in *Cendant* when evaluating the percentage-of-the-fund method: (1) the results obtained for the Class; (2) objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the quality, skill, and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) public policy; and (7) awards in similar cases. *Anselmo v. W. Paces Hotel Grp., LLC*, 2012 WL 5868887, at *4 (D.S.C. Nov. 19, 2012) (citing *Cendant*).

### 1.    The Results Obtained for the Class

As courts of this District have pointed out, the Fourth Circuit has concluded that "'the most critical factor' in calculating a reasonable fee award 'is the degree of success obtained.'" *Mullinax v. Parker Sewer & Fire Subdistrict*, 2014 WL 12774925, at *13 (D.S.C. Mar. 11, 2014) (quoting *Brodziak v. Runyon*, 145 F.3d 194, 196 (4th Cir. 1998)). The results achieved here, after more than two years of litigation, provide meaningful cash benefits of $25 per booster seat bought to class members submitting proof of purchase (which is broadly defined). Alternatively, those same class

members can, if they wish to continue to purchase Britax products, choose to receive a $40 voucher to use on the Britax website.[2]

Although defendants frequently resist providing any settlement benefits at all to class members not having proof of purchase, Class Counsel was able to persuade Britax to agree to also provide class members without proof of purchase with $25 vouchers that can be used for purchases on the Britax website. In addition, the Settlement includes beneficial non-monetary relief providing further education to class members making decisions regarding the proper child safety seat for their growing children.

Given the hard-fought litigation that would, in the absence of this settlement, have continued and the risks the Class would face at the class certification, summary judgment, trial, and appellate stages, the Settlement provides actual relief now rather than years down the road. The Settlement results are, therefore, meaningful.

### 2.    Class Member Objections

To date, there have been no objections to the Settlement. Class Counsel will advise the Court upon receipt of any objection.

### 3.    The Quality, Skill, and Efficiency of the Attorneys Involved

Milberg, Coleman, Bryson, Phillips, Grossman PLLC, the sole Plaintiffs' counsel in this case, is a national firm with a well-regarded class action practice. Class Counsel Decl. Ex. A. The firm, including Class Counsel Jonathan Cohen and Martha Geer, are currently litigating class actions in state and federal courts throughout the country with a substantial focus on consumer protection cases. Class Counsel Decl. ¶ 3. In addition, Ms. Geer was appointed co-lead counsel in

---

[2] The Court can consider the vouchers with respect to the results achieved without implicating CAFA, which is concerned about attorneys using the face value of vouchers to increase the monetary amount of the settlement fund for purposes of the percentage-of-fund attorney fee calculation. It is appropriate for the Court to consider non-monetary benefits in assessing the results achieved by Class Counsel.

11

*In re Evenflo Company, Inc. Marketing, Sales Practices & Products Liability Litigation*, MDL No. 20-md-02938-DJC in the District of Massachusetts; *Carder, et al. v. Graco Children's Products, Inc.*, 2:20-cv-00137-LMM in the Northern District of Georgia (a consolidation of numerous class actions); and *Jimenez v. Artsana USA, Inc.*, No. 7:21-cv-07933-VB (a consolidation of two class actions) in the Southern District of New York)—all cases involving sales of booster seats with claims similar to those in this case. In litigating this case, the firm has proceeded efficiently with the bulk of the work done by a few lawyers although other experienced members of the firm have been consulted and involved as needed. Milberg and Class Counsel employed their experience and skill to vigorously litigate this case and ultimately achieve a beneficial settlement for the Class.

### 4.    The Complexity and Duration of the Litigation

As described above, this Settlement is the product of more than two years of litigation, which began in March 2021 and included substantial discovery by both plaintiffs and Britax, initial work with experts, and full briefing of Plaintiffs' class certification motion. The case presented complex issues regarding side-impact testing, consumer perceptions, relevant NHTSA regulations, scientific research regarding child safety restraint systems, and potential damages models.

### 5.    The Risk of Nonpayment

Because of complicated issues relating to both class certification and summary judgment, Plaintiffs faced a realistic possibility that the court might deny class certification and grant summary judgment. If the case had not settled, Plaintiffs would have incurred significant additional expenses and expended substantial time taking depositions of Britax employees and former employees, working with expert witnesses regarding Britax's testing and consumer perceptions, defending and taking expert depositions, engaging in Daubert motion practice, preparing and opposing summary judgment motions, preparing for and conducting a trial, engaging in post-trial motion practice, and prosecuting or defending any appeals. Every stage of that process could have

impacted the recovery in this action. This Settlement represented an efficient alternative to what may otherwise be a prolonged and complex class action.

6.     Public Policy

Public policy weighs in favor of granting Plaintiffs' Motion. Plaintiffs' and the Class Members' claims are too small to allow them to pursue their claims individually. In false advertising cases like this one, each individual's economic damages are very modest, meaning that victims of false advertisements can only obtain counsel and have a realistic chance of prevailing by pursuing a class action. And class actions are only viable if Class Counsel have a realistic possibility of receiving attorneys' fees because of a settlement or after prevailing through litigation. Although Class Counsel obtained a positive result ultimately in this case, this outcome was anything but certain until shortly before the Settlement was reached.  There are few lawyers willing to invest significant time and resources prosecuting a lawsuit that involves complicated and uncertain legal questions and has a substantial risk of receiving no compensation—as would likely be the case if class certification were denied or summary judgment granted. In these circumstances, "public policy favors adequate awards of attorney's fees to encourage aggrieved plaintiffs to bring these actions and to provide incentives for plaintiffs' counsel to take such cases." *Allura*, 2021 WL 2043531, at *5.

7.     Awards in Similar Cases

As shown earlier, in the Fourth Circuit, courts have routinely awarded fees in class actions representing a third of the cash settlement and sometimes more. Recently, the Fourth Circuit suggested that it would not consider an attorneys' fee award representing 45.8% of a cash fund an abuse of discretion. *Lumber Liquidators*, 27 F.4th at 307.

**C.     Application of the Lodestar Crosscheck Supports an Award of Plaintiffs' Attorneys' Fees.**

As an additional safeguard in evaluating attorney fee awards, the Fourth Circuit has

13

employed the lodestar multiplier cross-check set forth in *Barber*, 577 F.2d at 226, which includes the following factors, many of which overlap with the *Cendant* factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorneys' opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorneys' expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases. *Id.*

        1.    The Time and Labor Required (First, Seventh, and Eleventh *Barber* Factors)

As set forth above, Class Counsel spent significant time communicating with Plaintiffs; investigating facts; working with testifying experts on child car seat and booster seat testing and consulting experts on other issues; researching the applicable law; preparing a well-pleaded complaint and amended complaint; serving multiple requests for production of documents, sets of interrogatories, and requests for admission; serving and negotiating subpoenas on retailers of Britax's booster seats; responding to Britax's requests for production of documents and interrogatories; preparing for and defending the depositions of the three Class Representatives; preparing for and defending the deposition of Plaintiffs' testing expert; preparing for and taking the deposition of a Britax executive and Britax's testing expert and consumer perception expert; briefing Plaintiffs' motion for class certification and opposing Britax's related Daubert motions; preparing for a 30(b)(6) deposition of Britax; negotiating discovery disputes with Britax; and preparing for and engaging in mediations and conducting additional negotiations until a settlement agreement was reached.

As described in the Class Counsel Declaration and set out in Ex. B to that Declaration, the attorneys and paralegals have collectively expended more than 1,620 hours in connection with this litigation. These hours were reasonable considering the complexity and procedural posture of the case. The bulk of the work was done by one partner assisted by associates (who changed over time) with assistance from other attorneys on specific issues as needed. The amount of time and labor expended in this case is reasonable given that the case proceeded through the bulk of discovery and class certification briefing before the case settled. Settlement avoided additional high costs that would have resulted had Plaintiffs proceeded with the Britax depositions, filed a motion to compel, completed merits-related expert preparation and discovery, and engaged in summary judgment briefing—to say nothing of trial preparation if the Court denied summary judgment and any appeals.

        2.    <u>Novelty and Difficulty of the Issues, and the Skill and Experience Required to Litigate Them, and the Undesirability of the Case in the Legal Community (Second, Third, Ninth, and Tenth *Barber* Factors)</u>

This class action is novel in that Plaintiffs did not contend that Britax's booster seats are defective, but rather that Britax engaged in false advertising regarding the side-impact testing of its booster seats and the side-impact protection that the booster seats provided. This distinction has legal ramifications and leads to the use of different types of experts, including consumer perception experts and experts evaluating the effectiveness of a booster seat's technology. In addition, because NHTSA regulates child safety seats, including booster seats, this case gave rise to complex issues regarding pertinent NHTSA regulations or lack of regulations. Further difficulty arose out of the timeline—because Plaintiffs alleged that the statutes of limitation had been tolled due to fraudulent concealment, the relevant time frame extended back to the late 2000s.

Notably, even though numerous other law firms had filed class actions against other booster seat manufacturers, to Class Counsel's knowledge, no firm other than Milberg has

attempted to file suit against Britax regarding its booster seat. This is likely because the claims against Britax appeared more difficult to pursue, and few lawyers were willing to invest the time and expense with the greater risk this case presented of receiving no compensation. *See Reed v. Big Water Resort, LLC*, 2016 WL 7438449, at *11 (D.S.C. May 26, 2016) (in granting approval of fees in class action settlement, finding relevant that "[n]o other law firm took on this case, nor attempted to represent any of the [class] members in pursuing claims….").

Class Counsel, however, have greater experience with these claims as they are litigating class cases against three other booster seat manufacturers, one of which is nearing final approval. Class Counsel's experience in investigating and pursuing claims against the other booster seat manufacturers provided them with a better basis for assessing the strengths and weaknesses of the claims of the Class Members, and thus to reach a resolution in a way that adequately accounts for those strengths and weaknesses.

   3. <u>Counsel's Expected Compensation, the Customary Fee for Like Work, and the Preclusion of Other Employment (Fourth, Fifth, Sixth, and Twelfth *Barber* Factors)</u>

These factors are similar to the fifth *Cendant* factor discussed above. Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis. Class Counsel have received no compensation during this litigation and have incurred significant unpaid fees and costs. Such a substantial risk of nonpayment in return for advancing all the costs and fees weighs heavily in favor of finding Class Counsel's requested award reasonable. *See Reed*, 2016 WL 7438449, at *10 ("In complex and multi-year class action cases, the risks of litigation are immense and the risk of receiving little or no recovery is a major factor in awarding attorney's fees."). Further, "[e]ven if Plaintiffs had prevailed at class certification in some form, no judgment could have been secured until many additional steps, including dispositive motions, Daubert motions, trial, and potentially appeals, had

been completed," which weighs in favor of granting the requested fee. *Id.*

Here, Class Counsel's hourly rates, submitted as cross-check for the percentage-of-recovery request, are based on Laffey Matrix rates, which are appropriately considered since this case is national in scope and required experts from across the country who typically charge higher rates. Over the course of more than two years of litigation, partners, associates, and paralegals in this action collectively billed more than 1,620 hours. Class Counsel Decl. Ex. B. Based upon the Laffey Matrix rates, attorneys with 20 years or more experience are billed at an hourly rate of $1,057; attorneys with 11-19 years of practice experience are billed at an hourly rate of $878; attorneys with 8-10 years of experience are billed at $777; attorneys with 4-7 years of experience are billed at $538; and attorneys with 1-3 years of experience are billed at $437. Paralegals and law clerks are billed at $239. *Id.*

Courts in the Fourth Circuit have previously determined that using rates are appropriate when reviewing lodestar in approving fee petitions. *Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 575-77 (E.D. Va. Sept. 29, 2016); *see, e.g.*, *In re NeuStar*, 2015 WL 8484438, at *10 (approving in 2015 rates of $260-$310 for paralegal services, $420-$700 for associates, and $800-$975 for partners); *Hosch v. BAE Systems Info. Sols., Inc.*, 2015 WL 12227738, at *3 n.4 (E.D. Va. Apr. 28, 2015) (approving in 2015 rates of $650/hour); *Phillips v. Triad Guar. Inc.*, 2016 WL 2636289, at *8 (M.D.N.C. May 9, 2016) (finding in 2016 that partner billing rates of $640-$880 per hour and associate billing rates of $375-$550 per hour were "within the range of reasonableness[,]" especially given that "the market for class action attorneys is nationwide and populated by very experienced attorneys with excellent credentials").

In addition, Plaintiffs note that in comparable complex cases, attorneys are often not just awarded their lodestar, but a multiple thereof. *See DeWitt v. Darlington Cnty., S.C.*, 2013 WL 6408371, at *13 (D.S.C. Dec. 6, 2013) (stating that "[c]ourts have generally held that lodestar

multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fees" and noting that another district court in the Fourth Circuit had awarded a fee with a "lodestar multiplier between 3.4 to 4.3 times the lodestar") (cleaned up); *McCurley*, 2018 WL 6650138, at *19-20 ("Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee.").

Here, Class Counsel's lodestar is $1,174,151 based on 1,620.8 hours and Laffey rates of $437-$1057 for lawyers and $239 for paralegals. Class Counsel Decl., Ex. B. Since the $450,000 figure in the Settlement includes expenses and expenses have amounted to $135,684, there can be little doubt that the lodestar cross-check supports the conclusion that the $450,000 award of fees and expenses is reasonable.

4.    The Amount in Controversy and Results Obtained (Eighth *Barber* Factor)

This factor mirrors the first *Cendant* factor discussed above in Section I.B.1. As discussed above, the non-reversionary Settlement Fund will be a minimum of $1.3 million and a maximum of $1.8 million if the $1.3 million is exhausted. Any portion of the $1.3 million that is not distributed will *not* be returned to Britax, but rather will be distributed to *cy pres* not-for-profit organizations of the Parties' collective choosing and related to the subject matter of the litigation (including, but not limited to, Safe Kids Worldwide), and/or (ii) used to fund third parties' research and development and/or educational car seat campaigns. ECF No. 119-3 p. 6 ¶ 3.2.3.4. Funds not exhausted will, therefore, continue to advance the safety of children. The relief is significant and was reached after over two years of litigation, substantial written and deposition discovery, expert review, and hard-fought, arms-length negotiations, including two mediations. Class counsel undertook substantial responsibilities in this litigation and produced a significant result for Class Members and absent these efforts, it is unlikely Class Members would have been able to obtain adequate representation or any relief at all. *Reed*, 2016 WL 7438449, at *10-11.

## II.    <u>**Class Counsel are Entitled to Reimbursement of Their Expenses.**</u>

"Courts routinely award reimbursement for expenses incurred to prosecute class actions." *McCurley*, 2018 WL 6650138, at *7. "Generally, courts permit recovery of costs advanced for litigation expenses, including document production, consulting with experts, and court and mediation costs." *Robinson*, 2019 WL 2591153, at *17 ("The Court is authorized to award costs that are reasonable in nature.").

Here, Class Counsel has covered all costs associated with this litigation and the settlement efforts and assumed the risk that they may not recover for these expenses and costs. To date, Class Counsel has incurred $135,684.29 in expenses, including deposition costs, expert consulting fees, mediation fees, court fees, and other costs. Class Counsel Decl., Ex. C. Since these expenses are reasonable, the Court should approve reimbursement of those expenses.

## III.    <u>**Class Representatives Should be Awarded Service Awards.**</u>

Lastly, as part of the Settlement, Britax has agreed, subject to Court approval, to pay Service Awards of $2,500 to each of the three Class Representatives in this action in recognition of the time and effort they personally invested in pursuing this litigation. As the court explained in *Allura*:

> "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest" and "[c]ourts around the country have allowed such awards to named plaintiffs or class representatives." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 WL 4487734, at *5 (D.S.C. July 23, 2015) (granting "modest" service awards of $5,000.00 for each Named Plaintiff); *see also Savani v. URS Prof'l Solutions LLC*, 2014 WL 172503 at *10, (D.S.C. Jan. 15, 2014) (explaining why incentive awards are appropriate given the "burdensome" task of being a class representative).

2021 WL 2043531, at *8 (cleaned up).

"To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing

19

the litigation." *MI Windows & Doors*, 2015 WL 4487734, at *6. In *Allura*, 2021 WL 2043531, at *7, the court approved $5,000 service awards to the plaintiffs for providing support to Class Counsel, providing documents to support the litigation, maintaining regular contact with Class Counsel regarding the status of their case, and otherwise working with Class Counsel to prosecute and resolve the action on behalf of the nationwide Settlement Class. Courts in this District have also approved of higher awards. *See Robinson*, 2019 WL 2591153, at *17 (granting service award of $15,000 to named plaintiff for her assistance in class counsel's investigation and prosecution of claims, finding the award was well within the range of reasonable incentive awards); *McCurley*, 2018 WL 6650138, at *8 (granting service award of $25,000) (collecting cases).

In this case, Ms. Tiffany Coleman, Ms. Keli Swann, and Ms. Heather Brooke all stepped forward and voluntarily assumed the responsibilities of representing the interests of potential class members throughout the nation. They worked with Class Counsel in connection with the complaint and amended complaint; they each located and produced documents responsive to Britax's discovery requests; they each responded to interrogatories; they reviewed filings in the case; they worked with Class Counsel to prepare for their depositions; they each spent hours in deposition; and they consistently maintained contact with Class Counsel regarding proceedings in the case. A service award in the amount of $2,500 for each Plaintiff is appropriate. *See Berry*, 2020 WL 9311859, at *16 (awarding $10,000 service award when class representative regularly communicated with class counsel about the case, gathered and reviewed documents to respond to discovery, and prepared and appeared for his deposition).

<u>**CONCLUSION**</u>

For the above reasons, Plaintiffs respectfully request that the Court:

1.  Approve attorneys' fees, costs, and expenses in the amount of $450,000;

2.  Grant each Class Representative a service award of $2,500 in recognition of their efforts on behalf of the class; and

20

3.     Award such other and further relief as the Court deems reasonable and just.


Dated: November 27, 2023.                    Respectfully submitted,

*/s/ Harper T. Segui*

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Harper T. Segui
Martha A. Geer*
900 W. Morgan Street
Raleigh, NC 27603
Phone: (919) 600-5000
Fax: (919) 600-5035
hsegui@milberg.com
mgeer@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
Jonathan B. Cohen*
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Phone: (865) 247-0080
Fax: (865) 522-0049
jcohen@milberg.com

***Attorneys for Plaintiffs***
* admitted *pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 27, 2023, I caused the foregoing to be filed via the Court's electronic filing system which will notify all counsel of record of the same.


*/s/ Harper T. Segui*
Harper T. Segui